Gerald E. RAYBORN, Appellant,

v.

STATE of Missouri, Respondent.

No. SD 29296.

Missouri Court of Appeals,
Southern District,
Division One.

June 24, 2009.

disrobed, and Movant forced her to fellate him while he drove, and again before she escaped when Movant stopped at a convenience store.

Eventually Movant was arrested; charged with sodomy, rape, felonious restraint, and three counts of armed criminal action (ACA); and convicted of all but rape and an ACA count. After this court affirmed the convictions,[1] Movant brought a Rule 29.15 motion. Relief was denied after an evidentiary hearing. Movant now appeals, claiming that his direct-appeal counsel was ineffective in two respects.

Mark A. Grothoff, Columbia, for Appellant.

Chris Koster, Atty. Gen., Robert J. (Jeff) Bartholomew, Jefferson City, for Respondent.

DANIEL E. SCOTT, Presiding Judge.

Gerald Rayborn ("Movant") appeals from a judgment denying his motion for post-conviction relief.

## Facts and Background

Sixteen-year-old A.B. ("Victim") and her friend went to a New Year's Eve drinking party. The friend's mother retrieved them, which irritated Victim, who called for a ride home. Movant, who was a good friend of Victim's father, showed up. Victim got in his car and left.

Movant, an "intimidating guy," began talking dirty. He drove to his home, took Victim inside, and kept up his dirty talk. Afraid, Victim demanded to go home "right then" or she would tell her father everything. They walked to Movant's car, where he pulled a gun and said, "You brought this on yourself." He told her to "get naked" or he would shoot her. She

## Principles of Review

Our review is limited to whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(k). This means our consideration of the whole record must firmly and definitely persuade us that a mistake was made. *Phillips v. State*, 214 S.W.3d 361, 364 (Mo.App.2007).

■ The standard for proving ineffective assistance of appellate counsel is high. Movant must prove that appellate counsel made a mistake that was prejudicial. Proof of a mistake requires a strong showing that counsel failed to raise an obvious claim that a competent and effective lawyer would have asserted. Prejudice means a reasonable probability that Movant would have prevailed on appeal but for counsel's unprofessional error. *See Cole v. State*, 223 S.W.3d 927, 931 (Mo.App.2007).

## Point I—Failure to Cite Case

■ We provide the following background for Point I. A detective interviewed Movant after his arrest. Movant initially chose to remain silent, then volunteered, "I should not have done what I

---

1. *See State v. Rayborn,* 179 S.W.3d 298 (Mo. App.2005).

done." The trial court denied Movant's motion to suppress that statement.

At trial, the State sought to question the detective about Movant's statement, and the following exchange occurred:

Q: When you brought Mr. Rayborn to your office, did you advise him of his rights?

A: Yes, I did.

. . .

Q: And after you did so, did Mr. Rayborn make any—did he respond in any way to the Miranda warning?

A: He stated he would rather—

Defense counsel objected to any reference to Movant's initial silence, and moved for a mistrial. The court sustained the objection, but denied a mistrial, deeming the cutoff statement ambiguous. Defense counsel declined the court's offer to instruct the jury to disregard the statement. To avoid any further problem, the State voluntarily ended its line of questioning without offering Movant's statement—which the court had not suppressed—that "I should not have done what I done."

On appeal, Movant claimed the trial court abused its discretion in denying a mistrial. This court disagreed, finding the partial answer ambiguous and that it was "pure speculation" what the jury thought of it. *Rayborn*, 179 S.W.3d at 299.

Point I renews Movant's Rule 29.15 claim that his direct-appeal counsel was ineffective for not citing *State v. Richardson*, 724 S.W.2d 311 (Mo.App.1987), a case involving the State's calculated effort to improperly emphasize post-Miranda silence:

In the case at bar the prosecutor's question, although unanswered, sought to elicit from the witness the fact that the defendant was silent. . . . The only answer the prosecutor reasonably could have anticipated was "no." The only answer which would have been favorable to the state was "no."

The question was more than a question. It was an unmistakable reference to, and an improper comment upon, defendant's exercise of his right to remain silent. The fact that the question was unanswered did not remove its prejudicial effect.

*Id.* at 316.

■ Movant claims we would have similarly viewed the questioning in this case had direct-appeal counsel cited *Richardson*. This argument did not convince the motion court and does not persuade us. Judges are presumed to know the law and apply it in making their decisions. *See State v. Carlock*, 242 S.W.3d 461, 465 (Mo. App.2007).[2] This court may not have known the 1987 *Richardson* case by name, but it knew and still knows the law stated therein. Those principles do not apply when, as here, a defendant voluntarily speaks after receiving Miranda warnings. *Richardson*, 724 S.W.2d at 315–16. *Richardson* also is distinguishable where the prosecutor's question "did not appear calculated to elicit an answer recounting defendant's silence," (*State v. Stolzman*, 799 S.W.2d 927, 935 & n. 4 (Mo.App.1990)), a description that fits this case:

Although not asking the most precise question, the prosecutor was entitled at trial to get to his real question concerning the actual, unsolicited statement that Appellant had made on his way out of

---

**2.** Although *Carlock* refers to trial judges (the subject of that case), we hope appellate courts may be indulged the same presumption.

the interview room. The prosecutor terminated his inquiry about the interview with Appellant and moved to a different area of inquiry. The answer given by the detective was brief and ambiguous with no further comment at any time by the prosecutor.

*Rayborn,* 179 S.W.3d at 299. Point I fails.

### Point II—Failure to Challenge Refusal of Continuance

■ Movant also claims appellate counsel should have challenged the trial court's denial of a continuance to permit DNA testing of semen found on Victim's jeans.[3] In denying this claim, the motion court credited appellate counsel's explanation for not doing so:

> Well, for one reason, the Judge offered to exclude that evidence, and defense counsel declined. But more important, I couldn't prove prejudice because he was acquitted on the rape charge, and the presence of semen on the jeans wouldn't bear on the sodomy charge at all, because [Victim] was not wearing them at the time.

■ Appellate counsel need not raise all non-frivolous issues, but may strategically "winnow out" some in favor of others. *Shive v. State,* 784 S.W.2d 326, 328 (Mo. App.1990). We do not interfere with continuance rulings absent a strong showing of abuse of discretion and resulting prejudice. *See State v. Lucas,* 218 S.W.3d 626, 629 (Mo.App.2007). Since Movant persuasively suggests neither of these,[4] his appellate counsel did not omit an obvious claim that would have required reversal. *Cole,* 223 S.W.3d at 931.

---

**3.** Since no spermatozoa were intact, the regional crime lab could not analyze the semen for DNA, but other labs could have done so.

### Conclusion

The trial court did not clearly err in denying relief. We affirm the judgment.

BARNEY and BATES, JJ., concur.

---

**4.** Movant's trial defense never was misidentification.