**STATE of Missouri, Respondent,**

v.

**Michael L. ROYER, Appellant.**

**No. SD 29967.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 30, 2010.

Ellen H. Flottman, Columbia, for Appellant.

Chris Koster, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Michael L. Royer ("Appellant") appeals his conviction by a jury for one count of the Class D felony of resisting or interfering with arrest, a violation of section 575.150, RSMo Cum.Supp.2006. He was sentenced by the trial court to seven years in the Missouri Department of Corrections with that sentence to run consecutive to any other existing sentences. In his sole point relied on, Appellant asserts the trial court plainly erred in allowing evidence that marijuana was thrown from the vehicle he was driving during his flight from the authorities. We affirm the judgment and sentence of the trial court.

On January 27, 2009, Appellant was charged via "Amended Felony Information" with one count of the class D felony of "resisting a . . . lawful stop. . . ." Appellant was also charged as a prior and persistent offender per sections 558.016, RSMo Cum.Supp.2006, and 557.036, RSMo Cum.Supp.2004, based on his prior convictions.

Appellant does not challenge the sufficiency of the evidence to support his conviction. "Viewing the evidence in the light most favorable to the jury's verdict," *State v. Smith,* 185 S.W.3d 747, 751 (Mo.App. 2006), the record reveals that on the evening of April 8, 2008, Officer Tom Savard ("Officer Savard") of the Springfield Police Department was dispatched to the Budget Inn on North Glenstone Avenue as part of an incident investigation. As he pulled into the parking lot he observed "a small blue car in the northwest corner of the parking lot with a male outside the vehicle." He stated he then saw the vehicle leave the parking lot "quickly" so he drove

around to the back of the building where he was "flagged … down" by several people in the parking lot who indicated the blue car had "completely knocked down" a chain link fence. Officer Savard then pursued the vehicle, which was traveling at an extremely high rate of speed, north on Glenstone Avenue until he eventually lost sight of it. Officer Savard was then told by a man in a pickup truck that a small blue car had turned right onto Valley Water Mill Road at an "extremely fast" speed. Officer Savard informed his dispatcher of this information and he continued his search for the vehicle.

Thereafter, Officer Savard was advised that the vehicle under scrutiny was traveling south on Highway 65. Officer Savard and Officer Chris Welsh ("Officer Welsh") then traveled to the Kearney Street exit and prepared to set out spike strips at Kearney Street and Mulroy Street. Before the officers were able to set up the spike strips, Appellant's car came barreling through the intersection at a high rate of speed. Both officers were able to clearly see that Appellant was driving the vehicle and that there was a female passenger with him.

The vehicle then continued on Kearney Street. At that time, Police Chief Justhan Webster ("Chief Webster") of the Strafford Police Department was alerted that a vehicle was traveling at speeds of over 100 miles per hour on Highway OO in his jurisdiction. Chief Webster then attempted to place spike strips in the roadway, but Appellant sped through the area before he was able to get them placed. Chief Webster thereafter pursued Appellant's vehicle at speeds of over 100 miles per hour, observed Appellant improperly passing vehicles, and saw Appellant force oncoming traffic onto the shoulder of the roadway. Chief Webster continued his pursuit as Appellant turned onto Interstate 44 and drove erratically across the median. Appellant then returned the vehicle to Interstate 44 and continued driving at excessive speeds. Appellant also "crossed in front of a tractor-trailer unit, entered the shoulder of [Interstate] 44, and then made a right turn, through the median again, and entered Highway OO." Chief Webster lost sight of Appellant at that time, but eventually located the empty vehicle abandoned on the shoulder of Highway OO. A foot pursuit then ensued with the aid of tracking dogs, and Appellant's passenger, Sally Lentz ("Ms. Lentz"), was located and arrested. Appellant was thereafter apprehended and transported to the Strafford Police Station.

Once at the police station, Chief Webster advised Appellant of his Miranda[1] rights, and Appellant agreed to speak with the officers. Chief Webster then questioned Appellant as to "why he did not stop for [the officers,]" and Appellant indicated that "he did not want [Ms. Lentz] to go to jail." Chief Webster also asked Appellant "if he knew how many lives he endangered," and Appellant responded that "he did not care and that the brakes didn't work on the car." Thereafter, Appellant remained in custody.

The trial in this matter was held on January 27 and 28, 2009. At trial, Officer Savard testified that during the pursuit he and Officer Walsh stopped on Kearney Street and Mulroy Street to place spike strips in the roadway, but were unable to place the spike strips before Appellant sped through the intersection. After Appellant drove past, Officer Savard located a small "black zip bag" with the name of a men's cologne on the outside of the bag on the eastbound shoulder of the roadway. When Officer Savard opened the bag he found that it contained "a basketball-size, tightly-wrapped ball of marijuana" and

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"some unknown pills." Likewise, Officer Welsh testified that he was present when the bag was recovered by the side of the roadway and that it contained controlled substances. There was no objection made to the testimony of either officer.

Appellant testified that on the evening in question he had been at the Budget Inn with Ms. Lentz and Jason Hale ("Mr. Hale") and that Ms. Lentz, who Appellant claims was driving the blue car at issue, ran over the fence. He related that after Ms. Lentz "s lid into the fence" Mr. Hale exited the vehicle and Ms. Lentz sped off with Appellant in the passenger seat. He related that at the time Ms. Lentz indicated she was speeding off because "her dad was … chasing her, following her." Appellant stated he never saw any police vehicles pursuing them, but he did see a white Chevy pickup truck tailgating them and he believed, based on Ms. Lentz's assertions, that it was her father chasing them. He stated that at some point he saw Ms. Lentz "toss something out the window" of the vehicle, but he was not sure what it was. He related that once the vehicle was stopped he fled on foot, because Ms. Lentz indicated there were officers approaching the vehicle. Appellant also admitted to numerous prior criminal convictions, including several for distribution of controlled substances, and further admitted that were he to be convicted of the crime at issue it would be his fifth felony conviction.

As previously mentioned, at the close of all the evidence, the jury found Appellant guilty of the crime charged and he was later sentenced by the trial court as a prior and persistent offender to seven years in the Missouri Department of Corrections. This appeal followed.

█ In his sole point relied on, Appellant maintains the trial court plainly erred in allowing evidence "that marijuana was thrown from the car in which [he] was charged with fleeing.…" He asserts the inclusion of such evidence violated his constitutional rights because he "was not charged in this case with any drug offenses, and any probative value the drug evidence may have had was outweighed by the prejudicial impact of the evidence of uncharged crimes."

█ Appellant failed to preserve this issue for review, and acknowledges this failing by requesting plain error review. *See State v. Shoults,* 147 S.W.3d 163, 167 (Mo.App.2004). Rule 30.20[2] provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Plain errors are evident, obvious, and clear, and we determine whether such errors exist based on the facts and circumstances of each case." *State v. Johnson,* 182 S.W.3d 667, 670 (Mo. App.2005). It is Appellant's burden to establish the trial court committed an evident, obvious and clear error, *State v. Thurman,* 272 S.W.3d 489, 498 (Mo.App. 2008), and that there has been a manifest injustice or a miscarriage of justice. *State v. Stanley,* 124 S.W.3d 70, 77 (Mo.App. 2004). "A claim of plain error places a much greater burden on a defendant than an assertion of prejudicial error." *State v. Wright,* 216 S.W.3d 196, 199 (Mo.App. 2007). "Plain error and prejudicial error are not synonymous terms, and mere allegations of error and prejudice will not suffice for reversal under plain error review." *Id.* If facially substantial grounds are not found to exist, the appellate court should decline to exercise its discretion to conduct plain error review. *State v. Mayes,* 281 S.W.3d 918, 921 (Mo.App. 2009). Plain error can serve as the basis for granting relief on direct appeal only if

---

**2.** All rule references are to Missouri Court Rules (2010).

the error was outcome determinative. *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006).

■ Here, Appellant argues that the officers' testimony regarding finding the small bag containing marijuana on the shoulder of the roadway is inadmissible evidence of other crimes and wrongly illustrated Appellant's propensity to commit such crimes. " 'It is generally recognized that a criminal defendant has a right to be tried only for the offense for which he is charged.' " *State v. Turner*, 242 S.W.3d 770, 777 (Mo.App.2008) (quoting *State v. Johnson*, 161 S.W.3d 920, 924 (Mo.App. 2005)). "The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes." *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993), *superseded on other grounds by* § 566.025, RSMo 1994. However, there are exceptions to this rule. *State v. Edwards*, 116 S.W.3d 511, 533 (Mo. banc 2003). Evidence of other, uncharged misconduct is admissible and

> 'has a legitimate tendency to prove the specific crime charged when it tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with the commission of the crime on trial.'

*Bernard*, 849 S.W.2d at 13 (quoting *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992)). "An additional exception is recognized for evidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged. This evidence is admissible to present a complete and coherent picture of the events that transpired." *State v. Mor-*

*row*, 968 S.W.2d 100, 107 (Mo. banc 1998) (internal citation omitted); *see also State v. Skillicorn*, 944 S.W.2d 877, 887 (Mo. banc 1997), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 889 (Mo. banc 2008). Additionally, "[e]vidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial," and "if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect." *Bernard*, 849 S.W.2d at 13. "The balancing of the effect and value of evidence rests within the sound discretion of the trial court." *Id.*

We agree with the State that there are factual similarities between the facts in the instant matter and those found in *Shoults*, 147 S.W.3d at 163–66. In *Shoults*, the defendant, who was charged with resisting arrest, threw certain "drug related" items from his vehicle during a pursuit by police. *Id.* at 165–66. He was convicted of resisting arrest and appealed. *Id.* On appeal he argued, among other things, that the drug related items entered into evidence " 'had no probative value since [the defendant] was not charged with a drug offense.' " *Id.* at 166. The appellate court reasoned that

> [the d]efendant was charged with resisting arrest based on his flight when [the officer] attempted to stop him by turning on emergency lights and siren. The throwing of objects from the car occurred during the time [the officer] pursued [the] defendant. [The d]efendant's actions in throwing the objects from his car were part of the circumstances and sequence of events that surrounded [the] defendant's actions that constituted the offense of resisting arrest.

*Id.* Accordingly, the reviewing court found that the State " 'is permitted to paint a complete and coherent picture of the crime

charged and it is not required to sift and separate the evidence and exclude the testimony tending to prove the crime for which a defendant is not on trial.'" *Shoults*, 147 S.W.3d at 166 (quoting *State v. King*, 588 S.W.2d 147, 150 (Mo.App. 1979)). Thus, the court concluded the trial court did not abuse its discretion in admitting the drug related objects into evidence. *Shoults*, 147 S.W.3d at 167.

Here, as in *Shoults*, Appellant fled from police and discarded a bag containing marijuana during the throes of the resulting chase. Accordingly, Appellant's "actions in throwing the objects from [the] car were part of the circumstances and sequence of events that surrounded [his] actions that constituted the offense of resisting arrest." *Id.* at 166–67. This evidence was logically relevant in that it tended to show the circumstances surrounding the crime with which he was charged. In addition to showing the sequence of events which led to his arrest, the evidence in this instance had further logical and legal relevance because it clearly illuminated Appellant's motive and intent in choosing to flee from authorities. The evidence is certainly probative of the fact that Appellant fled because he did not want to be caught with the marijuana in his possession. "It is only where the evidence of other crimes is offered to prove an issue other than propensity that the probative value of such evidence tends to increase." *State v. Dudley*, 912 S.W.2d 525, 528 (Mo.App.1995). This Court does not find, on the face of Appellant's claim, that the trial court committed plain error. *Shoults*, 147 S.W.3d at 168. Point denied.

The judgment and sentence of the trial court is affirmed.

LYNCH, and BURRELL, JJ, concur.